**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TAMIRAT TADESSE CHAMISO,

Plaintiff,

v. Civil Action No. 3:26-cv-880

MENELIK ARAGAW ABEBE, et al.,

Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF No. 6) (the "MOTION"), the memorandum in support (ECF No. 7), the opposition (ECF No. 11), and the reply (ECF No. 13). The MOTION will be granted with respect to negligence per se, negligent hiring, negligent retention, negligent supervision, and negligent training, and denied in all other respects. The Court finds that the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

**BACKGROUND**

This case arises out of a vehicle accident between Menelik Abebe and Tamirat Chamiso. ECF No. 6, at 1. Abebe, a tractor trailer driver employed by Western Express, Inc. ("Western Express"), struck Chamiso and caused him severe injury. Id. In a skimpy, rather conclusory COMPLAINT (ECF No. 1-1), Chamiso alludes

to several theories of liability against Western Express and Abebe related to the accident.

The COMPLAINT does not divide the claims into individual counts. However, the allegations can be read as asserting the following theories:

I. Negligence (Abebe): Abebe acted carelessly in operating the truck at the time of the accident. ECF No. 1-1 ¶¶ 2-5.

II. Negligence per se (Abebe): Abebe violated unspecified "state and federal regulations" with his conduct during the accident. Id. ¶ 13.

III. Negligence - Vicarious Liability (Western Express): Abebe was an employee of Western Express acting in the scope of his employment at the time of the accident. Id. ¶¶ 11-12. Thus, Western Express is vicariously liable for Theories I and II. Id.

IV. Negligent Hiring (Western Express): Western Express carelessly hired Abebe to drive tractor trailers. Id. ¶ 14.

V. Negligent Retention (Western Express): Western Express carelessly retained Abebe as an employee despite the risk he posed to other drivers. Id.

VI. Negligent Supervision (Western Express): Western Express acted carelessly in their supervision of Abebe's employment. Id.

VII. Negligent Training (Western Express): Western Express acted carelessly in training Abebe for the role. Id.

VIII. Gross Negligence and Willful-and-Wanton Negligence (Abebe and Western Express): Abebe and Western express acted with gross negligence or in a willful-and-wanton manner with respect to each of the other theories. Id. ¶ 15.

The MOTION challenges five aspects of the COMPLAINT. ECF No. 7, at 2. First, Theory II, Negligence per se, is said to be defective because Chamiso identified no applicable law or regulation violated by Abebe or Western Express. Second, Chamiso did not allege a sufficient factual basis for the negligent hiring (Theory IV) and retention (Theory V) claims. Third, negligent supervision (Theory VI) and training (Theory VII) are not independent causes of action under Virginia law. Fourth, Western Express admits that Abebe was acting in the scope of his employment, so all direct negligence claims against it should be dismissed. And finally, the gross negligence and willful/wanton negligence claims (Theory VIII) fail because they do not meet Virginia pleading standards.

**STANDARD OF REVIEW**

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (cleaned up). The legal sufficiency of the complaint is measured by federal pleading standards set by the

Federal Rules of Civil Procedure, as particularized by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). So, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). But, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." Giacomelli, 588 F.3d at 193 (internal quotation marks omitted). In sum, the motion to dismiss analysis asks whether the defendants are given "fair notice" of the causes of action raised against them. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

**ANALYSIS**

**I. Theory II: Negligence Per Se**

A claim of negligence requires showing that the defendant owed a duty of care to the plaintiff, what level of care was

required, that the defendant breached that duty by not acting according to the standard of care, and that the breach actually and proximately caused injury to the plaintiff. Al-Saray v. Furr, 910 S.E.2d 320, 324 (Va. 2025). When a statute or regulation sets the standard of care, violation of the statute can be a per se violation of the standard of care — a theory called negligence per se. Steward v. Holland Family Props., LLC, 726 S.E.2d 251, 254 (Va. 2012).

Under Virginia law, a claim based on negligence per se requires the plaintiff to allege that:

> [T]he tortfeasor had a duty of care to the plaintiff, the standard of care for that duty was set by statute, the tortfeasor engaged in acts that violated the standard of care set out in the statute, the statute was enacted for public health and safety reasons, the plaintiff was a member of the class protected by the statute, the injury was of the sort intended to be covered by the statute, and the violation of the statute was a proximate cause of the injury.

Id. (emphasis added). The statute does not create the duty; rather, it merely supplies the applicable standard that the defendant must follow. Id.

The MOTION challenges Theory II on the ground that Chamiso did not allege exactly what statute or regulation Western Express or Abebe may have violated. ECF No. 7, at 3-4. The COMPLAINT contains four allegations related to negligence per se. First, it says that "[Abebe] failed to perform numerous . . . statutory

duties placed on a driver of a tractor-trailer at night when making a turn." ECF No. 1-1 ¶ 13. Then, "[Abebe] failed to position the tractor-trailer to make a safe turn, and [sic] other failures as required by the law, including state and federal regulations." Id. (emphasis added). Third, "Abebe consciously elected to ignore . . . his knowledge of . . . the law, and state and federal regulations" in his operation of the truck. Id. Finally, Chamiso writes that "[a]s a direct and proximate result of the . . . negligence per se of Defendants," he was injured. Id. ¶ 15.

These generalized allegations are insufficient to plead a claim of negligence per se. In Steward, when the Supreme Court of Virginia explained and specified the elements of that claim, it used the term "the statute" five times and linked each reference to those elements. Steward, 726 S.E.2d at 254. So, it is not surprising that it is settled that, "[t]o establish negligence per se, the plaintiff must identify a specific statute or regulation violated by the defendant." Ball v. Takeda Pharms. Am., Inc., 963 F. Supp. 2d 497, 506 (E.D. Va. 2013) (dismissing a negligence per se claim where, although the plaintiff cited numerous laws generally, she did not identify which provision was violated and how), aff'd, 587 F. App'x 78, 78 (4th Cir. 2014). The COMPLAINT does not identify which law Abebe or Western Express violated. Thus, the negligence per se claim must be dismissed.

Chamiso relies on Hehl v. Belk, Inc., No. 4:24-cv-23, 2024 WL 3930974, at *3 (W.D. Va. Aug. 22, 2024) for the proposition that a plaintiff pleading negligence per se need not identify the law. In Hehl, the plaintiff was severely shocked by faulty elevator that was electrified due to an unknown flaw. Id. He alleged that the defendant had violated the applicable laws providing standards for elevators without identifying a particular statute. Id. The court cautiously allowed the claim to survive a motion to dismiss, reasoning that Hehl "can't know what statute or regulation – if any – was violated" until discovery began because the elevator was in Belk's exclusive possession and control. Id. The court also acknowledged that this claim "falls just over the line into permissible" and cautioned that Hehl must identify a particular statute at summary judgment. Id.

Hehl is of little help to Chamiso. There, the plaintiff was incapable of naming a statute under the facts available to him and, on that ground, was given a tentative chance to proceed to discovery. Id. Chamiso, by contrast, could have done so. He alleges particular actions taken by Abebe that led to the collision. See, e.g., ECF No. 1-1 ¶ 13. He could easily have looked at the applicable vehicle safety laws and determined whether those acts violated them.

Indeed, Chamiso has done exactly this, attempting to cure the deficiency by citing provisions of the Federal Motor Carrier Safety Regulations and the Virginia Code in his OPPOSITION. ECF No. 11, at 5-6. But "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Smart Wearable Techs. Inc. v. Fitbit, Inc., 274 F. Supp. 3d 371, 377 n.3 (W.D. Va. 2017) (quoting Mylan Lab'ys, Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991)). Unlike Hehl, Chamiso could have, and should have, named these provisions in his COMPLAINT. See Hehl, 2024 WL 3930974, at *3. Because he did not do so, the COMPLAINT does not state a claim of negligence per se, and Theory II will be dismissed. Because the brief suggests the existence of a statute (or statutes) that might form the basis for such a claim, the dismissal of the negligence per se claim will be without prejudice to amend.

**II. Theory IV: Negligent Hiring**

A negligent hiring claim requires the plaintiff to allege and prove that an employer placed a person, whom it knew or should have known to have a propensity for misconduct, in a position where it was foreseeable that the hiree posed a risk to others by nature of their employment. Se. Apartments Mgmt., Inc. v. Jackman, 513 S.E.2d 395, 397 (Va. 1999) (quoting Ponticas v. K.M.S. Invs., 331 N.W.2d 907, 911 (Minn. 1983)). The inquiry does not ask whether

the employee was likely to engage in wrongdoing in general; instead, courts examine whether "specific danger that ultimately manifested itself" was reasonably clear to the employer at the time of hiring. Doe v. Baker, 857 S.E.2d 573, 584 (Va. 2021) (quoting Malicki v. Doe, 814 So. 2d 347, 362 (Fla. 2002)).

The COMPLAINT contains many allegations of what Western Express knew or should have known about Abebe before hiring. See ECF No. 1-1 ¶ 14 (alleging that Western Express should have known that "Abebe did not follow procedures for safe vehicle operation; operated the vehicle with impaired hearing; . . . and other violations."). But "mere conclusory statements[] do not suffice" to state a claim. Iqbal, 556 U.S. at 678. Indeed, these statements are quite similar to those found insufficient in Iqbal — naked assertions that the defendant should have known something, lacking any factual basis as to why they should have known. Id.

To plead a legally sufficient claim of negligent hiring, Chamiso must have alleged facts showing that it is plausible that Western Express knew that Abebe presented a danger if he were hired as a truck driver. See Jackman, 513 S.E.2d at 397. Western Express helpfully lists some examples in the MOTION, writing that the COMPLAINT "identifies no prior incident, no complaint, no driving-record fact, no date or manner by which Western Express acquired knowledge, and no account of what a reasonable investigation would

have disclosed." ECF No. 7, at 6. Because the COMPLAINT does not include any nonconclusory facts tending to show that Western Express was aware of Abebe's supposed risk at the time of hiring, Theory IV will be dismissed.

This dismissal will be without prejudice because Chamiso could potentially allege sufficient facts (not conclusions) tending to support the claim. Chamiso did not point to such facts in his OPPOSITION, instead relying solely upon the legally insufficient and conclusory statements addressed above. Thus, the Court cautions Chamiso that those factual contentions must be made with the good-faith belief that they "will likely have evidentiary support" after discovery. Fed. R. Civ. P. 11(b)(3). They may not be bare recitals of the examples provided by Western Express or otherwise made without a reasonable basis to think that they will be proven true following further investigation.

**III. Theory V: Negligent Retention**

The negligent retention claim fails for the same reasons as negligent hiring. To state a claim for negligent retention, the plaintiff must allege and prove that an employer "knew or should have known [an employee] was dangerous and likely to harm [customers]" and that the employer carelessly retained the employee despite that risk. Jackman, 513 S.E.2d at 397. An employer breaches this duty when it does not terminate an employee in the

face of a "risk of future harm [that] was so grave that discharging the dangerous employee would have been the only reasonable response." A.H. v. Church of God in Christ, Inc., 831 S.E.2d 460, 474 (Va. 2019)

Chamiso applies the same allegations to the retention theory as he did for the hiring theory. ECF No. 11, at 8. Those contentions are equally as conclusory here as they were there. Therefore, the negligent retention claim will be dismissed.[1] And, this dismissal will also be without prejudice on the assumption that Chamiso can plead sufficient facts with the good faith belief that such facts might be proven true following discovery. Fed. R. Civ. P. 11.

---

[1] Chamiso requests that, if the Court grants the MOTION, he be given the opportunity to refile Theories IV and V after discovery has taken place. ECF No. 11, at 9. He argues that the matter was "originally filed . . . in state court" and that he cannot allege any facts until "all the facts [are] known to all parties." Id. This argument appears to confuse the standard for a motion to dismiss with that for a motion for summary judgment. A Rule 12(b)(6) motion determines whether a claim could theoretically have sufficient factual basis such that it merits the Court and the parties expending time, money, and effort on discovery because there is a plausible reason the plaintiff might recover. See Twombly, 559 U.S. at 570. It is at the summary judgment stage, not the pleading stage, when the parties act with the benefit of discovery and factual evidence. See Fed. R. Civ. P. 56. And Chamiso cites no authority for why a case originally filed in state court is to be judged by a lower pleading standard than is required by Twombly and Iqbal. Cf. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938) (holding that federal courts must apply federal procedural law when sitting in diversity). A party may seek leave to amend a complaint anytime that the standard for permitting amendment can be met. But it is not permissible to grant a general plea for future amendment.

**IV. Theories VI and VII: Negligent Supervision and Training**

Virginia law simply does not contemplate a duty of care in supervision. A.H., 831 S.E.2d at 475 (citing cases). And to the extent negligent training is distinct from negligent supervision, no Virginia appellate court has found the existence of such a duty. See Parrish v. Am. Airlines, Inc., 97 Va. Cir. 271, 277 (2017) (citing cases). A federal court should not accept the invitation to create one where the state courts have not spoken and where nothing in the decisional law of the state suggests the existence of such a claim. Therefore, Theories VI and VII also will be dismissed.

In his OPPOSITION, Chamiso inexplicably argues that Theories VI and VII are part of a single "direct negligence claim against Western Express" as opposed to "independent causes of action" that survive their express foreclosure under Virginia law. ECF No. 11, at 9-10. This argument misunderstands what a cause of action is, how to plead a claim of negligence, and what exactly Western Express challenges in its MOTION. The tort of negligence requires pleading that the defendant owed the plaintiff some duty of care and that the defendant's breach of that duty caused injury. Al-Saray v. Furr, 910 S.E.2d 320, 324 (Va. 2025). Terms like "negligent training" and "negligent supervision" are shorthand for particular theories of the duty element of a negligence claim —

namely, that the defendant owed a duty to act with reasonable care in training or supervising an employee. Cf. A.H., 831 S.E.2d at 475. Western Express argues that Virginia law forecloses any theory that it owed a duty to train or supervise Abebe. ECF No. 7, at 7-8. Chamiso cites no authority for how a semantic difference in the name of a cause of action affects the analysis of whether a plaintiff has successfully pleaded such a duty.

This is not to say that facts regarding the supervision or training of Abebe may not be relevant to other issues in the case. For example, the quality and extent of Western Express' supervision of Abebe may show that the company ignored the risks that employing or retaining him posed, which weighs on the negligent retention claim (if that claim is amended and survives a second motion to dismiss). See Fairshter v. Am. Nat'l Red Cross, 322 F. Supp. 2d 646, 652-53 (E.D. Va. 2004) (finding that admitting facts about negligent training at trial was permissible because they were relevant to general causation considerations). Accordingly, here, the Court finds only that, insofar as supervision and training are raised as independent theories of liability, they will be dismissed. The dismissal will be with prejudice because the legal defect is incurable.

**VI. Theories IV–VII: Direct Negligence**

Western Express seeks to dismiss all of the direct negligence claims against itself. It argues that "they are redundant" because "Western Express . . . admit[ted] that Abebe was employed by Western Express and was operating within the course and scope of that employment." ECF No. 7, at 8. Although each of these claims will be dismissed for the reasons set forth above, they will not be dismissed on this ground.

The Federal Rules of Civil Procedure permit plaintiffs to plead theories in the alternative. See Fed. R. Civ. P. 8(d). It is premature at this stage to bar all direct negligence claims for the sole reason that Western Express admitted in its answer that Abebe acted in the scope of his employment. "The Supreme Court of Virginia has never directly answered the question" of whether such claims may proceed after the employer admits vicarious liability. Le Doux v. W. Express, Inc., 126 F.4th 978, 988 (4th Cir. 2025). Chamiso must eventually choose upon which theory he would like to proceed; but he need not do so at the pleading stage. That question may be reviewed again at summary judgment or at trial. See Paul v. W. Express, Inc., No. 6:20-cv-51, 2023 WL 12017067, at *1 (W.D. Va. Mar. 9, 2023) (considering the issue at the summary judgment stage), aff'd sub nom. Le Doux v. W. Express, Inc., 126 F.4th 978 (4th Cir. 2025); Fairshter v. Am. Nat'l Red Cross, 322 F. Supp. 2d

646, 653-55 (E.D. Va. 2004) (finding evidence of both vicarious and direct liability was admissible at trial). Therefore, the direct negligence claims against Western Express will not be dismissed solely because of the vicarious liability admission.

**VI. Theory VIII: Gross Negligence, Willful/Wanton Negligence**

Western Express' last challenge relates to Chamiso's allegations that Abebe acted with gross negligence or willful-and-wanton negligence in the accident. Virginia law contemplates three levels of negligence: simple or ordinary, gross, and willful and wanton. Doe v. Baker, 857 S.E.2d 573, 587 (Va. 2021). Gross negligence means that the defendant "show[ed] indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Cowan v. Hospice Support Care, Inc., 603 S.E.2d 916, 918 (Va. 2004). That is, the conduct would "shock fair-minded persons," but does not rise to the level of "willful recklessness." Id.

Willful-and-wanton negligence means that the defendant acted "consciously in disregard of another person's rights or act[ed] with reckless indifference to the consequences" while being "aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Griffin v. Shively, 315 S.E.2d 210, 213 (Va. 1984). Alfonso v. Robinson, 514 S.E.2d 615 (Va. 1999) involved a truck

driver who left a disabled tractor-trailer in a travel lane on a 55-mile-per-hour highway in a "very dark area" for a period of about 15 minutes. Alfonso, 514 S.E.2d at 619. The court found that there was a jury-triable issue of willful-and-wanton negligence because the driver was a professional who had received training on what to do in such an event and consciously disregarded that knowledge while acting in a manner that displayed a shocking disregard for safety. Id.

Construing the facts in the light most favorable to Chamiso, the COMPLAINT plausibly states a claim for willful-and-wanton negligence. As alleged in the COMPLAIN, Abebe was a professional driver trained on how to operate the vehicle safety. ECF No. 1-1 ¶ 13. While at a busy truck stop and in a dark area, he began a right turn without ever looking to his right. Id. While executing the turn, he acted contrary to his training by not examining his mirrors,[2] conducting a "visual search" or "proper lookout," and using "proper space management" which would have revealed that his truck was coming dangerously close to Chamiso and his vehicle.

---

[2] In its REPLY, Western Express relies heavily on a supposed concession in the COMPLAINT that Abebe exercised a modicum of care by using his mirrors. See, e.g., ECF No. 13, at 4, 9, 12. But the COMPLAINT in fact alleges that "[a]lthough [Abebe] knew he had side mirrors, he did not use them." ECF No. 1-1 ¶ 13. The facts as alleged in the COMPLAINT do not show any exercise of care on Abebe's part.

Id. Together, these facts, if true, are sufficient to show that Abebe acted with reckless disregard to a known risk of danger. Just as in Alfonso, where the defendant ignored his safety training while knowingly placing a dangerous obstacle in a place where he knew people would likely strike it, Chamiso was trained on the proper procedure for turning at night, knew he was in a busy area, and ignored his training while taking no action to mitigate the risk he would strike someone. Alfonso, 514 S.E.2d at 619; see also Paul v. W. Express, Inc., No. 20-cv-51, 2021 WL 1259446, at *4 (W.D. Va. Apr. 6, 2021) (denying a motion to dismiss a willful-and-wanton negligence claim where a professional driver ignored safety training and drove at an unsafe speed in hazardous weather conditions without using safety features on the truck).

Therefore, the MOTION will be denied insofar as it challenges the Plaintiff's willful-and-wanton negligence claim. Because willful-and-wanton negligence has a higher standard of care than gross negligence, the gross negligence claim inherently survives as well.

**CONCLUSION**

For the foregoing reasons, the MOTION (ECF No. 6) will be granted as to the negligence per se claim in Theory II, the negligent hiring claim in Theory IV, and the negligent retention claim in Theory V; these dismissals will be without prejudice. In

order to survive a second Motion to Dismiss and avoid running afoul of the provisions of Fed. R. Civ. P. 11, the forthcoming AMENDED COMPLAINT must allege sufficient facts that counsel has a reasonable basis to believe will be proven true after discovery, not mere legal conclusions or assertions made without regard to their veracity. The MOTION will be granted as to the negligent supervision claim in Theory VI and the negligent training claim in Theory VII, and these dismissals will be with prejudice. The MOTION will be denied in all other respects.

Further, because the COMPLAINT fails to set out each of its many claims in separate counts, thereby making it difficult to understand, the COMPLAINT will be dismissed without prejudice to filing an AMENDED COMPLAINT, asserting only those claims that are dismissed without prejudice. The AMENDED COMPLAINT must present in nonconclusory form such claims as are not dismissed as beyond correction (i.e., those that are not insufficient as a matter of Virginia law) in separate counts.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 16, 2026